UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM C. BOYNTON,

                Plaintiff,                No. 11-cv-13878

vs.                                               Hon. Gerald E. Rosen

HATCH STAMPING COMPANY,

                Defendant.
_____/

OPINION AND ORDER REGARDING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

                At a session of said Court, held in
                the U.S. Courthouse, in Detroit, Michigan
                on March 12, 2013

                PRESENT:   Honorable Gerald E. Rosen
                                     United States Chief District Judge

I. INTRODUCTION

Plaintiff William C. Boynton, acting *pro se*, commenced this action on September 6, 2011 in this Court, asserting claims of race discrimination under federal and state law against Defendant Hatch Stamping Company ("Hatch"). Plaintiff's claims arise from the termination of his employment with Hatch.

After a period of discovery, Defendant filed the instant Motion for Summary Judgment. Plaintiff has responded. Having thoroughly reviewed and considered the parties' briefs and supporting documents and the entire record of this matter, the Court has determined that the pertinent allegations and legal arguments are sufficiently

1

addressed in these materials and that oral argument would not assist in the resolution of this motion. Accordingly, the Court will decide Defendant's motion "on the briefs." See L.R. 7.1(f)(2). This Opinion and Order sets forth the Court's ruling.[1]

## II. PERTINENT FACTS

In August 2006, Defendant Hatch Stamping Company, a second-tier automobile parts supplier, hired Plaintiff, an African-American, as a full-time truck driver at Hatch's facility in Spring Arbor, Michigan. Shortly thereafter, however, Hatch determined that a full-time driver was not needed at the Spring Arbor facility. Instead, it was decided that Plaintiff would work in a combined position as a parts sorter in the shipping department and as a backup truck driver at Hatch's facility in Chelsea, Michigan. Plaintiff began

---

[1] Approximately three months after discovery closed and Defendant's motion for summary judgment was filed, and more than month and a half after Plaintiff filed his response, an attorney filed an appearance on behalf of Plaintiff along with a "Motion for ADR, Oral Argument, and Alteration of the Scheduling Order," seeking an order re-opening discovery, for further briefing and oral argument on Defendant's motion, directing the parties to submit to ADR prior to the Final Pre-trial Conference, and adjourning the Final Pre-trial Conference and trial until after ADR is completed. The Court will deny Plaintiff's Motion. Plaintiff informed the Court in December 2011 that he intended to obtain counsel to represent him. He was further counseled to do so when he appeared *pro se* at the initial Scheduling Conference in January 2012 and he was given the phone numbers for Legal Aid and the Metropolitan Detroit Bar Association's lawyer referral service to assist him in finding an attorney at that time. However, Plaintiff never did retain an attorney. He appeared *pro se* at hearings before the Magistrate Judge, and filed witness lists and response briefs himself. Admirably, Plaintiff complied with all court rules and scheduling order deadlines, and he timely filed a clear and cogent brief in response to Defendant's motion for summary judgment. To grant the relief Plaintiff requests at this late date, long after the close of discovery and after a dispositive motion has been filed, would unnecessarily multiply the proceedings, unnecessarily delay resolution of this matter, and cause Defendant prejudice. Under these circumstances, Plaintiff's motion will be denied. *See Lowe's Home Centers, Inc. v. OlinCorp.¸* 313 F.3d 1307, 1315 (11th Cir. 2002) (holding that a district court does not abuse its discretion in denying a motion that is designed to avoid an impending adverse summary judgment).

working in September 2006 and was paid at the rate of a full-time truck driver, which was considerably more than the rate paid for entry-level employees in the shipping department. [Wilson Aff., ¶¶ 3-6, Defendant's Ex. 1.] Nevertheless, Plaintiff was unhappy with the change in circumstances.

In November 2006, Hatch hired Tony Trupiano, a Caucasian, as a full-time truck driver at the Spring Arbor facility for the "second shift." Plaintiff was not considered for the position because he had made it known that he did not like to work the second shift. [Wilson Aff., ¶¶ 9-10.] Plaintiff believes that his opportunities for raises were negatively impacted because Hatch did not offer him a full-time truck driving position. [Plaintiff Deposition, pp. 33-34.] Hatch counters that Plaintiff was given a raise in 2007 and thereafter it imposed a wage freeze on all hourly employees. [Wilson Aff., ¶¶ 36-37.] Plaintiff believes that the fact that Hatch did not give him the full-time truck driver position at the Spring Arbor facility is direct evidence of racial discrimination. [Plaintiff Dep., pp. 45, 121-22.]

In October 2008, Hatch modified Plaintiff's hours. His shift had been from 6:00 a.m. to 2:00 p.m., but was changed to 10:00 a.m. to 6:00 p.m. Plaintiff alleges that he was the only employee whose hours were altered in this manner. [Plaintiff Dep., p. 57.] This change occurred during a period when Hatch was laying off many of its employees. When he expressed discontent over the change in his hours to his supervisor, Marcus Burlingame, Burlingame told Plaintiff that he wanted to keep him because he was a good worker but that, in order to do so, his hours would have to be modified. [Plaintiff Dep., pp. 57-58.] Overall, between September 2006 and April 2010, Hatch laid off more than

200 of its employees. The majority of these employees were Caucasian. [Wilson Aff., ¶¶ 13-16.] However, Hatch retained Plaintiff throughout this time period. Plaintiff believes that he was never laid off because Hatch had an affirmative action policy. [Plaintiff Dep., pp. 118.]

In July 2009, Hatch instituted occasional four-day work-weeks for its truck drivers. On these weeks, many of the truck drivers were given either Monday or Friday off, enabling them to have a three-day weekend. However, Plaintiff was always given a day off during the middle of the week. When Plaintiff questioned his supervisor why he could not have a Monday or Friday off in order to have a three-day weekend, his supervisor told him that the truck drivers who had Mondays or Fridays off had more seniority than him. When questioned at his deposition why he believed this action was racially motivated, Plaintiff responded, "Just my feeling." [Plaintiff Dep., pp. 64-66.]

In August 2009, Plaintiff was scheduled to take a two week vacation. A plant manager requested him to cancel his vacation, but Plaintiff refused. A maintenance supervisor allegedly also harassed Plaintiff about his vacation, stating that he could permanently lay off Plaintiff. Again, however, Plaintiff presents no evidence that any of this was racially motivated. Plaintiff ultimately took his vacation and retained his job at Hatch. [Plaintiff Dep., pp. 66-69, 117.]

Plaintiff claims that he was discriminated against when his supervisor asked him to prepare trucks for other drivers. He admits, however, that he has no evidence that the request was motivated by racial animus. [Plaintiff Dep., pp. 109-112.]

The only evidence implicating racial discrimination that Plaintiff can point to is an incident where Rick Botham, a plant manager, supposedly told another employee that "everyone has a little prejudice in them." Plaintiff, however, did not personally hear Botham make the statement. [Plaintiff's Dep., p. 77.]

On April 13, 2010, Sandra Kenney, Plaintiff's supervisor at the time, told Plaintiff that he would be required to work at Hatch's facility in Fowlerville, Michigan, on April 15. The assignment was later changed to Hatch's facility in Howell, Michigan. Plaintiff asked if he would be paid for drive time -- that is, would he be able to punch in at the Chelsea facility before reporting to the other facility. Kenney told Plaintiff that she did not think this was possible, as she believed Hatch could be liable if anything happened to Plaintiff while driving to the other facility. Kenney said, however, that she would ask the Human Resources Department. [Plaintiff Dep., at p. 86.]

Later in the day, Plaintiff asked Kenney if she had spoken to the Human Resources Department.  Kenney replied that she had not but that she would do so right away.  When she returned, Kenney informed Plaintiff that Botham wanted to see him. Botham told Plaintiff that, while he believed his question regarding drive time was a good one, he had talked to the Human Resources Department and they said that employees could not be paid for drive time. [Plaintiff Dep., p. 89.] Afterward, Human Resources Manager Lauren Wilson also informed Plaintiff that it was company policy to compensate employees for mileage but not drive time if it was less than 60 miles. [Plaintiff Dep., p. 93.]   (Howell is only approximately 41 miles from Chelsea. [See Wilson Aff., ¶ 22.]) Plaintiff, however, insisted that he be paid for drive time. Plaintiff

5

claims that he had been paid for drive time in the past. [Plaintiff Dep., pp. 52-56, 88, 94.][2] He admits, however, that he does not know whether other employees had been paid for their drive time. [Plaintiff's Dep., p. 95.]

Wilson pleaded with Plaintiff to accept the assignment, informing him that a refusal could result in his termination. [Wilson Aff., ¶ 24; Plaintiff's Dep., pp. 101-02.] According to Wilson, Plaintiff would not relent and persisted with his argument that, if he was going to have to take the Howell assignment, he be allowed to punch in and out at the Chelsea facility, and, accordingly, be paid for his drive time to and from Howell. [Wilson Aff., ¶ 23; Plaintiff's Dep., pp. 103-106.] Plaintiff admits that, while he never said he would not take the Howell assignment, he never told anyone that he would take it, either. [Plaintiff Dep., pp. 105-06.] When, by 4:45 p.m. on April 15 Plaintiff had not committed to accepting the assignment, the Howell run was given to another employee. [Wilson Aff., ¶ 26.]

On April 15, 2010, Botham, Wilson, and other members of the Human Resources Department met to discuss Plaintiff's actions. They jointly decided to terminate Plaintiff for violating company policy by refusing a job assignment and refusing to obey valid orders. After his termination, Plaintiff was not immediately replaced. Instead, his job duties were spread among other employees. According to Defendant, approximately three

---

[2] Plaintiff does not, however, indicate the distance he was required to drive in these other instances.

6

months later, a replacement for Plaintiff was hired when Hatch's manpower needs changed. [Wilson Aff., ¶¶ 27-29.][3]

On November 2, 2010, Plaintiff filed a charge of racial discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). On June 6, 2011, the EEOC issued Plaintiff a Dismissal and Notice of Rights, informing him that "[b]ased upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes." The EEOC also notified Plaintiff that he had 90 days to file a lawsuit or else his claim would be forfeited. [See Defendant's Ex. 4.]

On September 6, 2011, Plaintiff initiated the instant action, alleging that his termination from Hatch was the result of racial discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Elliot-Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2101 *et seq*.

Defendant now seek summary judgment pursuant to Fed. R. Civ. P. 56.

### III. DISCUSSION

A.  APPLICABLE STANDARDS

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[ ] mandates the entry of summary judgment, after adequate time for discovery

---

[3] This replacement is not identified in the record by name and there is no indication as to his or her race. In any event, Plaintiff makes no claim in his Complaint, in his deposition testimony, in his Response to Defendant's Motion for Summary Judgment, or anywhere else in the record that his allegations of race discrimination in this action include being permanently replaced by a non-minority.

7

and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But in so doing, the respondent must "do more than simply show that there is some metaphysical doubt as to the material facts." *Betkerur v. Aultman Hospital Association*, 78 F.3d 1079, 1087 (6th Cir. 1996) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (footnotes with citations omitted)). The trial court has at least some discretion to determine whether the respondent's claim is plausible. *Id.* Moreover, any supporting or opposing affidavits or declarations "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted). "[W]here the record taken as a whole could not lead a rational trier of fact to find" for the respondent, the motion should be granted. *Betkerur, supra.* The Court will apply these standards in deciding Defendant's motion in this case.

8

B.     DEFENDANT HAS FAILED TO ESTABLISH A CLAIM OF RACE DISCRIMINATION

To prevail in a suit alleging employment discrimination in violation of Title VII or ELCRA, a plaintiff must prove either disparate impact or disparate treatment. *Ricci v. DeStefano*, 557 U.S. 557, 577, 129 S. Ct. 2658, 174 L. Ed. 2d 490 (2009); *Smith v. Goodwill Indus. of W. Michigan, Inc.*, 243 Mich. App. 438, 451, 622 N.W.2d 337 (2000). To establish disparate treatment, a plaintiff must show that "an employer has 'treated [a] particular person less favorably than others because of' a protected trait," such as race, and that such treatment was undertaken with a discriminatory motive. *Ricci*, 557 U.S. at 577 (quoting *Watson v. Fort Worth Bank & Trust,* 487 U.S. 977, 985–986, 108 S. Ct. 2777, 101 L.Ed.2d 827 (1988)). To establish disparate impact, a plaintiff must show that an employer uses "a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin." *Id*., at 578 (quoting 42 U.S.C. § 2000e–2(k)(1)(A)(i)). In other words, disparate impact claims involve "practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities." *Id*., at 577.

In this case, Plaintiff alleges employment discrimination based on disparate treatment. He does not allege that Hatch instituted a practice that had a disproportionately adverse effect on minorities. Instead, Plaintiff points to specific instances that he believes are evidence of discriminatory treatment he suffered while working at Hatch. He alleges in his complaint that Hatch failed to promote him, failed to raise his wages, did not allow

9

him to become a full-time truck driver, and ultimately terminated him because of his race. Thus, this motion will be analyzed under the disparate treatment framework.

Under both Title VII and ELCRA, disparate treatment may be proved through direct evidence. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 433, 438 (6th Cir. 2002). "Direct evidence" of discrimination is "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski v. Blue Cross and Blue Shield,* 469 Mich. 124, 666 N.W.2d 186 (2003); *Hazle v. Ford Motor Co.,* 464 Mich. 456, 462, 628 N.W.2d 515 (quoting *Jacklyn v. Schering Plough Healthcare Products Sales Corp.,* 176 F.3d 921, 926 (6th Cir.1999)). When a plaintiff can cite direct evidence of discrimination, the *McDonnell Douglas* shifting burdens of proof, addressed below, are not applicable. *Trans World Airlines, Inc. v. Thurston*, 463 Mich. 534, 539, 620 N.W.2d 836 (2001). The presentation of direct evidence is generally sufficient to submit the plaintiff's case to the jury. *Harrison v. Olde Financial Corp.*, 225 Mich. App. 601, 610, 572 N.W.2d 679 (1997). However, to withstand summary judgment, the plaintiff's evidence must be admissible. Fed. R. Civ. P. 56(e). Inadmissible hearsay evidence cannot be considered. *Hartsel v. Keys*, 87 F.3d 795, 803 (6th Cir. 1996), *cert. denied*, 519 U.S. 1055, 117 S. Ct. 683 (1997); *Jacklyn v. Schering-Plough Healthcare Prod. Sales Corp.*, 176 F.3d 921, 927 (6th Cir. 1999).

Often, direct evidence takes the form of comments made by a "decision-maker" in the adverse employment action at issue. *See*, *e.g.*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454, 456, 126 S. Ct. 1195, 163 L. Ed. 2d 1053 (2006) (decision-maker's use of the term "boy" in addressing African–American employees may be sufficient to show racial animus,

depending on the speaker's inflection, tone of voice, custom and usage). However, "general, vague, or ambiguous comments do not constitute direct evidence of discrimination because such remarks require a factfinder to draw further inferences to support a finding of discriminatory animus." *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008). *See*, *e.g.*, *Johnson v. Kroger Co.,* 319 F.3d 858, 865 (6th Cir.2003) (grocery store manager's statement "expressing concern about the potentially detrimental effect on business of having an African-American comanager" was not direct evidence that manager's decision to discharge the employee was the result of racial discrimination).

Contrary to his assertions, Plaintiff has presented no direct evidence of racial discrimination in this case. The only incident that Plaintiff can point to where race could possibly be implicated directly was the statement allegedly made by Plant Manager Rick Botham that "everyone has a little prejudice in them."[4] This comment was made by the plant manager to an employee other than Plaintiff. Plaintiff was not present when it was made and provides no evidence regarding the context in which it was made. Such a statement could refer to a multitude of subjects other than race and Plaintiff offers no evidence that the manager was referring to race. While the plant manager certainly could have been referring to race, this statement is simply not evidence which, if believed,

---

[4] To the extent that this statement could present a hearsay issue, as Botham was involved in the decision to terminate Plaintiff, for purposes of deciding this motion, the Court will assume that the statement would be admissible as an admission of an agent of a party opponent under Fed. R. Evid. 801(d)(2)(D). *See Carter v. Univ. of Toledo*, 349 F.3d 269, 274-76 (6th Cir. 2003).

*requires* the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. Rather, it is a general, vague, and ambiguous comment that cannot constitute direct evidence of discrimination. Consequently, Defendant has provided no direct evidence upon which to rest his claim.

However, Plaintiff could still prove disparate treatment through circumstantial evidence. Under both Title VII and ELCRA, where a plaintiff has no direct evidence of impermissible bias, in order to avoid summary judgment, he must prove his case under the familiar framework set forth in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973). *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). Under the *McDonnell Douglas* tripartite burden-shifting framework:

> To establish a *prima facie* case of employment discrimination, a plaintiff must demonstrate that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees. Once the plaintiff establishes this *prima facie* case, the burden shifts to the defendant to offer evidence of a legitimate, non-discriminatory reason for the adverse employment action. Finally, if the defendant succeeds in this task, the burden shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination.

*White, supra*, 533 F.3d. at 391-92 (internal citations omitted).

Plaintiff has not established a *prima facie* case of race discrimination. It is not disputed that Plaintiff meets the first element of a *prima facie* claim and this Court will assume that he has also met the second element.[5] To establish the third element, a

---

[5] Though Defendant argues in its Motion that Plaintiff cannot establish that he was qualified because he failed to obey company directions that he report for work on April 15, 2010 at the Howell facility, in *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 665

plaintiff must show "materially adverse change in the terms or conditions of employment because of the employer's actions." *Michael v. Caterpillar Fin. Services Corp.*, 496 F.3d 584, 593 (6th Cir. 2007) (quoting *Allen v. Michigan Dept. of Corr.,* 165 F.3d 405, 410 (6th Cir.1999)). Explained further,

> [a] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Id*. at 594 (quoting *Ford v. General Motors Corp.,* 305 F.3d 545, 553 (6th Cir.2002)). In this case, Defendant's termination of Plaintiff's employment is certainly materially adverse. However, Plaintiff's other claims -- that he had to prepare other drivers' trucks for them, was not allowed to have three day weekends, and similar complaints --  do not rise to the level of being materially adverse. Consequently, Plaintiff must show that, following his termination, he was replaced by a person who was not an African-American or that other drivers who were not African-American were not terminated after they

---

(6th Cir. 2000), the Sixth Circuit cautioned that the courts must not use the "qualified" element of the *prima facie* case to heighten the plaintiff's initial burden.  In an effort to ensure that the first two stages of the *McDonnell Douglas* inquiry remain analytically distinct, and that a plaintiff's initial burden not be too onerous, the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a *prima facie* case.  *Id*. at 660-1.   *See also Macy v. Hopkins County School Bd. of Educ*., 484 F.3d 357, 366 (6th Cir.), *cert. denied*, 552 U.S. 826 (2007) ("[W]hen assessing whether a plaintiff has met [her] employer's legitimate expectations at the *prima facie* stage of a termination case, a court must examine plaintiff's evidence independent of the nondiscriminatory reason produced by the defense as its reason for terminating plaintiff.")

refused a job assignment. As noted above, Plaintiff makes no claim of discrimination predicated upon the race of the person who ultimately replaced him and he has offered no evidence that other Hatch employees were not terminated after refusing a job assignment. Thus, because Plaintiff has not established the fourth element of a *prima facie* case of employment discrimination under *McDonnell Douglas*, his claim cannot survive Defendant's motion.

However, even assuming *arguendo* that Plaintiff had established a *prima facie* claim of race discrimination, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff's employment, i.e., his failure to follow his employer's directive that he report for work on April 15, 2010 at the company's Howell facility. Thus, under the third step of the *McDonnell Douglas* burden-shifting approach, Plaintiff must produce evidence that the reason identified by Defendants is a pretext for unlawful discrimination. Plaintiff's only purported evidence of pretext is Plant Manager Botham's alleged statement to a co-worker that "everyone has a little prejudice in them." Although Botham was admittedly involved in the decision to terminate Plaintiff's employment, this statement, allegedly made nine months before Plaintiff's firing, is to ambiguous to support a claim that reason articulated by Hatch for the termination was merely a pretext for racial discrimination.

Plaintiff having failed to establish pretext, the Court concludes that Defendant is entitled to summary judgment.

## IV. CONCLUSION

For all of the foregoing reasons,

    IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment **[Dkt. # 25]** be, and hereby is, GRANTED.

    IT IS FURTHER ORDERED that Plaintiff's Motion for ADR, Oral Argument and Alteration of the Scheduling Order **[Dkt. # 32]** is DENIED,

    IT IS FURTHER ORDERED that Plaintiff's Complaint be, and hereby is, DISMISSED, in its entirety, with prejudice.

    Let Judgment be entered accordingly.


Dated:  March 12, 2013

                          s/Gerald E. Rosen
                          GERALD E. ROSEN
                          CHIEF JUDGE, U.S. DISTRICT COURT


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Tuesday, March 12, 2013, by electronic and/or ordinary mail.

                          s/Julie Owens
                          Case Manager, (313) 234-5135